IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID JAMES YOUNG,                        )
                                          )
                    Petitioner            )
                                          )
        vs.                               )    Civil Action No. 08-91
                                          )    Chief Magistrate Judge Amy Reynolds Hay
DISTRICT ATTORNEY OF THE                  )
COUNTY OF ALLEGHENY; ATTORNEY             )
GENERAL OF THE STATE OF                   )
PENNSYLVANIA; DAVID                       )
DIGUGLIELMO,                              )
                                          )
                    Respondents           )

## MEMORANDUM OPINION AND ORDER

David James Young, ("Petitioner"), a state prisoner, was convicted in a jury trial of

conspiracy to commit second degree murder during the commission of a robbery, when Damon

Aforde, the intended victim of the robbery and a drug dealer, was shot to death.  Petitioner was

tried together with his co-defendant, who was also found guilty.  Petitioner made a confession to

the police where he confessed to intending to rob the victim along with his co-defendant,

although he claimed in that statement that he intended to abandon the conspiracy to rob the

victim.  That confession was introduced at trial.  Petitioner took the stand in his own defense and

raised an alibi defense which was contradictory to what Petitioner stated in the confession, but

the jury, apparently not crediting Petitioner's story on the stand, convicted him nonetheless.

Petitioner has now filed a federal habeas petition pursuant to Section 2254, attacking his

convictions.   Petitioner raises several claims of trial court errors and several ineffective

assistance of  counsel claims.  Because the state courts rejected most, if not all of the claims on

the merits, and because Petitioner fails to show that the state courts' disposition of his claims was

contrary to or an unreasonable application of United States Supreme Court precedent, his petition

should be denied.

**Relevant Factual and Procedural History**

Petitioner filed his pro se habeas petition, Dkt. [1], in which he raised the following

issues:

> A. Ground one: Ineffective assistance of [trial] counsel for failing to object
> to hearsay. . . . .
> My trail [sic] counsel did not object to the detective taking the stand an[d]
> saying that I told him a confession, with no evidence to support it . . . .
> B. Ground two: Ineffective assistance of counsel for failing to failing to
> [sic] file a timely alibi defense. . . .
> My trail [sic] counsel told me that because the detective was saying I made
> this confession that I should go along with it and when I said no, he never even
> attempted to contact my alibi witnesses.
> C.  Ground three: Whether the Pennsylvania Courts erred when they failed
> to find petitioner's statements inadmissible as a result of Petitioner's illegal arrest.
> . . . .
> Petitioner's conviction was based on illegally seized statements due to an
> unlawful arrest.  The arrest affidavit did not support the arrest and was contrary to
> federal law.
> D.  Ground four:  Ineffective assistance of [PCRA] counsel for failing to
> amend [the] PCRA petition. . . . .

Dkt. [1] at 9.  Petitioner also filed a "MEMORANDUM IN SUPPORT OF HABEAS

CORPUS[.]"  Dkt. [3].  The document is really a brief in support only of his claim raised above

as Ground Three.  The document is also a supplemental habeas petition in that it does not

provide legal argument in support of the other three issues raised in the habeas petition but, in

fact, it raises one additional issue as follows:  "B.  Whether the State Courts unreasonably

applied well established U.S. Supreme Court law in not finding the evidence at trial was

insufficient to convict petitioner of second-degree murder."  Dkt. [3] at16.

The Respondents filed an answer, raising various defenses, including the argument that the issues raised were meritless. Dkt. [11]. The Respondents also caused the original state court records to be sent to this Court. Petitioner filed a traverse, Dkt. [15], wherein he addressed only two issues, namely, arguments concerning Ground Two, i.e., the alleged ineffective assistance of counsel for failing file a timely alibi defense, and the last issue raised in the Memorandum of law, i.e., the alleged insufficiency of the evidence. The Respondents filed a supplemental or amended answer, Dkt. [17], which did not address the traverse but merely supplemented the original answer after discovering some additional records which were not available to the Respondents at the time they filed their original answer.

All parties have consented to the plenary exercise of jurisdiction by a Magistrate Judge, including the entry of final judgment. Dkt. Nos. [13] & [14].

**AEDPA is applicable**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA), which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254, was effective April 24, 1996. Because petitioner's habeas petition was filed in the year 2008, AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, AEDPA provides the applicable deferential standards by which the federal habeas court is to review the State courts' disposition of that issue. See 28 U.S.C.§ 2254(d) and (e).

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d).  In <u>Williams</u>, the Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: (1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or (2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States."  <u>Id.</u> at 404-05 (emphasis deleted).  The Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams</u>, 529 U.S. at 412-13.  The Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome."  <u>Werts v. Vaughn</u>, 228 F.3d at 197 (<u>quoting</u> <u>Matteo v. Superintendent, SCI-Albion</u>, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)).  Moreover, it is Petitioner's burden to prove the state court decision is either contrary to or an unreasonable application of clearly established federal law.  <u>See</u> <u>Matteo</u>, 171 F.3d at 888; <u>Werts v. Vaughn</u>, 228 F.3d at 197.

4

AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(2).

**Discussion**

As a general matter, Petitioner failed to even argue, let alone demonstrate, that the state courts' adjudications of most of his claims[1] were contrary to or an unreasonable application of then extant United States Supreme Court precedent.  For this reason alone, he fails to carry his burden to show entitlement to relief as to all of those claims save the admissibility of his confession.  Downing v. Del Papa, 145 Fed.Appx. 578, 580 (9th Cir. 2005)("Downing fails to **argue** how the Nevada Supreme Court's judgment resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States")(emphasis added); Anderson v. Secretary for Dept. of Corrections, 462 F.3d 1319, 1325 (11th Cir. 2006)("Petitioner had not met his burden of showing the state courts' decisions were 'contrary to' or 'an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States.'");  Sepulveda v. U.S., 330 F.3d 55, 66 (1st Cir. 2003) (AEDPA requires state "petitioners to bear a different burden; they must demonstrate that the state court's adjudication of the claim 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"); Laemmle v. Michaels, Civ.A. No. 08-333, 2009 WL 2602065, at * 5 (W.D.Pa. Aug. 24, 2009("Petitioner has cited no

---

[1]  The only issue that he does explicitly argue is found in his Memorandum of Law where he explicitly contends that the state courts' adjudication of his claim that his confession was inadmissible was an unreasonable application of Illinois v. Gates, 462 U.S. 213 (1983), Dkt. [3] at 15.

5

federal Supreme Court precedent nor has he even argued that such a disposition is contrary to or an unreasonable application of then extant federal Supreme Court precedent. For this reason **alone**, he fails to show that he merits relief under AEDPA.")(emphasis added).

In the alternative, as to Ground One, Petitioner claims ineffective assistance of trial counsel for failing to object to the admission of his confession on hearsay grounds. This claim may be rejected summarily. As the Respondents point out and as the PCRA court held, Petitioner's confession is an exception to the rule of hearsay in Pennsylvania. Pa.R.Evid. 804(b)(3). Petitioner's confession comes within the statement against interest exception to hearsay. Hence, any objection based on hearsay to Petitioner's confession would have been meritless. The rule is that counsel cannot be ineffective for failing to raise a meritless objection, as the PCRA court held. <u>Werts v. Vaughn</u>, 228 F.3d 178, 202 (3d Cir. 2000) ("counsel cannot be deemed ineffective for failing to raise a meritless claim"). Not only were the state courts' adjudications of this Sixth Amendment claim not contrary to or an unreasonable application of any then extant Supreme Court law, but the state courts were absolutely correct. Hence, this issue does not afford Petitioner relief.

We turn next to Ground Two, wherein Petitioner claims ineffective assistance of trial counsel for failing to file a timely alibi defense. The Respondents point out that this claim is meritless. We agree.

Petitioner claims his counsel should have filed a notice of alibi defense. Because his counsel did not file a notice of alibi defense prior to trial, the trial court permitted the alibi

defense to come in but instructed the jury, as permitted by state law, that the jury could consider

the lack of notice.[2]

The PCRA court, and the Superior Court on appeal of the PCRA petition, noted that

Petitioner in fact presented evidence of an alibi, when he took the stand in his own defense.  The

Superior Court further noted that

> Appellant testified on his own behalf that he was at the Olive Street address [i.e.,
> where the killing had taken place] earlier [i.e., before the killing] in the day on
> January 17, 1998 to visit Ms. Williams.  N.T. Trial, 4/3/01 at 420.  He further
> stated that he had told police the day after the shooting that he was at his father's
> house the night before "playing cards and drinking." *Id.* at 422.  On cross-
> examination, Appellant acknowledged that the reason his counsel had not
> provided a notice of alibi defense to the Commonwealth was that Appellant
> "didn't want to put [his] brother through this stuff on the stand." *Id.* at 429.
> Appellant then reiterated that he was at his father's house at the time of the
> shooting with five other people. *Id*. at 433-34.  He also explained that while his
> brother was present in the courtroom, he did not want him to testify, and his ill
> father was not well enough to do so. *Id*. at 434-35.  Appellant did not know the
> names of any of the other people who were present at his father's house on
> January 17, 1998. *Id*. . . . .
>
> An accused who intends to offer an alibi defense at trial is required to
> provide notice of that intention to the Commonwealth, and include "specific
> information as to the place or places where the defendants claims to have been at
> the time of the alleged offense and the name and addresses of witnesses who the
> defendant intends to call in support of such claim." Pa.R.Crim.P. 573(C)(1)(d),
> 42 Pa.C.S.A.  Based on our review, we find Appellant has simply failed to
> establish that the trial court's ruling is erroneous or unsupported by the record.
> Appellant does not claim that trial counsel ignored his alibi defense prior to trial.
> In any event, despite the lack of notice to the Commonwealth under Rule 573,

---

[2]  The Trial Court's instruction in this regard is as follows:

> Mr. Young testified, and you'll recall that Mr. Stadtmiller was asking questions
> concerning his alibi.  You may consider the alleged notice or lack of notice given to the
> Commonwealth.  Such notice is required when the Defendant intends to offer evidence
> that he was at a place other than at the scene of the crime when the crime was committed.
> The notice is meant to provide the Commonwealth with a fair opportunity to investigate
> and attempt to rebut the alibi claim.

State Court Record, N.T., at pp. 572, lines 12 -24 to 573, lines 1-2.

> Appellant was permitted to, and did, testify that he was somewhere other than the location of the shooting on January 17, 1998.  He was not prevented from calling other witnesses to corroborate his alibi, but nevertheless, did not wish to call any such witnesses.  The trial court provided instructions to the jury about how they should consider Appellant's alibi defense, which were accurate statements of the law and to which no objection was lodged.  *See* N.T. Trial, 4/3/01, at 562-63, 572-73.  In short, there has simply been no showing of prejudice to Appellant by counsel's alleged ineffectiveness.

Dkt. [11-4] at 35 to 36 (footnote omitted).  Petitioner has not carried his burden to show that the foregoing was contrary to or an unreasonable application of then extant Supreme Court precedent.  Nor do we find it to constitute such.  Neither is it an unreasonable determination of the facts.  The Superior Court found that Petitioner failed to show he was prejudiced by counsel's failure to provide an early notice of alibi.  Even if we were to review this issue de novo, we could similarly conclude that in light of the evidence presented, Petitioner simply cannot show prejudice given his counsel's failure to file a timely notice of alibi defense.

In his traverse, Petitioner contends that he was in fact prejudiced by counsel's failure to file a timely notice of alibi because such permitted the trial court to instruct the jury that they could disregard Petitioner's alibi.  Specifically, Petitioner argued that the "trial court instructed the jury that they did not have to consider petitioner's alibi testimony for the defenses' [sic] lack or failure to file a timely alibi notice required by R.Cr.Proc. 573."  Dkt. [15] at 2.  There are several problems with this argument.  First, the argument mis-characterizes, as a factual matter, what the jury instruction did.  The jury instruction did not say that the jury could disregard Petitioner's alibi, rather the instruction simply said that they could consider the fact that Petitioner did not timely file a notice of alibi defense.  This simply permitted the jury to consider the failure to timely file an alibi defense together with Petitioner's testimony regarding his alibi.

The jury instruction emphatically did not tell the jury to disregard Petitioner's alibi defense. Second, Petitioner has not convinced this Court, as he did not convince the Superior Court, see Dkt. [11-3] at 30, that such an instruction prejudiced him.  Petitioner's argument is not persuasive and at the very least, this Court does not find the Superior Court's disposition of this claim and of this argument either contrary to or an unreasonable application of then extant Supreme Court law.  Accordingly, this issue does not afford Petitioner relief.

We next take up Ground Three, i.e., Petitioner's claim that the state courts erred in finding that his statements to the police were admissible.  To the extent that he raises a claim of a Fourth Amendment violation, the claim is non-cognizable, given he had a suppression hearing in the state courts.  Stone v. Powell, 428 U.S. 465, 494 (1976) (indicating that where state has provided a hearing on Fourth Amendment issue, then federal court cannot entertain a claim in habeas proceedings based on alleged Fourth Amendment violations).   Moreover, it is Petitioner's burden to show that the prohibition of Stone v. Powell is not applicable.  Sanna v. Dipaolo, 265 F.3d 1, 8 (1st Cir. 2001)("The petitioner bears the burden of proving that his case fits within the contours of the [Stone v. Powell] exception");  Davis v. Blackburn, 803 F.2d 1371, 1372 (5th Cir. 1986); Doleman v. Muncy, 579 F.2d 1258, 1266 (4th Cir. 1978).  Petitioner has not carried that burden herein.

To the extent Petitioner is raising a Fifth Amendment claim, i.e., the police engaged in a custodial interrogation of him without providing him Miranda warnings, Petitioner has failed to show that the state courts' adjudication of this claim was contrary to or an unreasonable application of then extant Supreme Court precedent.  Petitioner made two statements.  The first statement occurred on January 18, 1998.  In that statement, Petitioner told the police that while

9

he was at the scene of the crime earlier on the date of the shooting, to visit his girlfriend, he had left from the scene long before the shooting occurred.  Dkt. [17-4] at 32 to 33.  The state courts found that on January 18, 1998, when Petitioner was being questioned, he was not held in custody and therefore the police were not required to give the Miranda warnings.  Dkt. [17-4] at 32 (Superior Court concluding petitioner was not subjected to "in custodial interrogation").  Petitioner has not carried his burden to show that this is contrary to or an unreasonable application of then extant Supreme Court precedent.  Nor do we find it to be such.  See, e.g., U.S. v. Duncan, 308 Fed.Appx. 601, 608 n.6 (3d Cir. 2009) ("Warnings pursuant to *Miranda* are required only if a suspect is both in custody and subject to interrogation.");  U.S. v. Perez-Vasquez, Unpublished Slip Copy, 2009 WL 90847, at *3 (3d Cir. 2009)("A *Miranda* warning is only required to be given when a suspect is in custody and subject to interrogation.")(citing Alston v. Redman, 34 F.3d 1237, 1246-47 (3d Cir. 1994)); U.S. v. Willaman, 437 F.3d 354, 359 (3d Cir. 2006) ("*Miranda*, of course, requires warnings only when the person the police are questioning is in custody.").  Nor does Petitioner even argue that the State Courts' adjudication resulted in an unreasonable determination of the facts, nor do we find it to be such.   Hence, Petitioner is entitled to no relief as to the January 18, 1998 statement.

Turning to the September 2, 1999 statement. Petitioner does not appear to contend here or in the state courts that his Miranda rights were violated by the taking of this statement.  He apparently implicitly concedes he was given Miranda rights warning.  See Dkt. [3] at 5 ("Although the Commonwealth presented facts of record indicating that petitioner was given Miranda rights, he argues that his initial arrest [on September 2, 1999) was illegal because it was based upon an insufficient affidavit for issuance of the warrant.").  His complaint concerning the

10

September 2, 1999 statement centers on a contention that the affidavit of probable cause

supporting the issuance of an arrest warrant was insufficient and therefore his arrest pursuant to

that arguably invalid arrest warrant was illegal and his statement provided thereafter was the fruit

of the illegal arrest and therefore must be suppressed.  This is quintessentially a Fourth

Amendment argument, i.e., I was illegally seized and hence all fruits of that seizure including any

statements from me must be suppressed, which is barred by Stone v. Powell.  See, e.g., Hampton

v. Wyant, 296 F.3d 560, 562 (7th Cir. 2002)("Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49

L.Ed.2d 1067 (1976), holds that, although both state and federal courts must apply the

exclusionary rule at trial and on direct appeal, it is inappropriate to use the exclusionary rule as

the basis of collateral relief because it would not appreciably augment the deterrence of improper

police conduct."); Jones v. Johnson, 171 F.3d 270 (5th Cir. 1999)(on federal habeas review,

federal court could not reexamine petitioner's Fourth Amendment claim alleging that post-arrest

statements should have been suppressed as "poisonous fruit" of his illegal arrest, since state

provided opportunity for full and fair litigation of petitioner's Fourth Amendment claim prior to

trial and thus was barred by Stone v. Powell); Jones v. Superintendent of Rahway State Prison,

725 F.2d 40, 42 (3d Cir. 1984) (contention that defendant's confession and all other evidence

admitted at his trial should have been suppressed as fruit of illegal arrest was not proper subject

for consideration by federal habeas corpus court under Stone v. Powell).  Hence, this issue is

barred under Stone v. Powell and cannot afford a ground of relief herein.  Thus, even if we

assume for the sake of argument that the state courts "got it wrong" regarding the suppression of

the September 2, 1999 statement, such would not afford Petitioner relief because violation of the

exclusionary rule simply does not afford Petitioner a ground for relief in federal habeas

proceedings.   See e.g., Guzman v. City of Chicago, 565 F.3d 393, 398 n.1 (7th Cir. 2009)("It is also interesting to note that the vast majority of suppression motions based on alleged Fourth Amendment violations are heard by state court judges, and their decisions not to grant the motions are immune from review by lower federal courts in habeas cases.")(citing Stone v. Powell);  White v. Galaza, No. C 99-2900, 2000 WL 630861, at *3 (N.D. Cal. May 8, 2000)("If [petitioner] White had the opportunity to litigate his Fourth Amendment claim, it cannot be the basis for granting his habeas petition, even if the state court's decision on his claim was contrary to clearly established Supreme Court precedent or involved an objectively unreasonable application of such precedent.")(citing Williams v. Taylor, 120 S.Ct. 1495, 1503 (2000)(wherein the Supreme Court noted it is "well settled that the fact that constitutional error occurred in the proceedings that led to a state-court conviction may not alone be sufficient reason" to grant a habeas petition, and citing Stone v. Powell, as an example of such an error)).   Hence, we need not address Petitioner's contention that the state courts' unreasonably applied Illinois v. Gates, 462 U.S. 213 (1983), which was a Fourth Amendment case.[3]  Dkt. [3] at 15.  But even if we did so, we would conclude that Petitioner failed to meet his burden to show that the State Courts unreasonably applied Illinois v. Gates.  Accordingly, the claimed entitlement to suppression of the September 2, 1999 statement cannot afford Petitioner relief.

---

[3]  See Illinois v. Gates, 462 U.S. at 217 ("We granted certiorari to consider the application of the **Fourth Amendment** to a magistrate's issuance of a search warrant on the basis of a partially corroborated anonymous tip. . . .  We consider the question originally presented in the petition for certiorari, and conclude that the Illinois Supreme Court read the requirements of our Fourth Amendment decisions too restrictively.")(emphasis added);  Idaho v. Wright, 497 U.S. 805, 832-33 (referencing "[o]ur Fourth Amendment cases" and citing Gates as one of them).  See also Bressler v. Timmerman-Cooper, No. 3:06 CV 2683, 2008 WL 313605 (N.D.Oh. Feb. 4, 2008)(holding that a claim in federal habeas proceedings that the State Courts' adjudication of petitioner's suppression motions in State Courts was contrary to or an unreasonable application of Illinois v. Gates was barred by the Stone v. Powell doctrine).

Petitioner's next claim may be dealt with summarily.  Petitioner claims ineffective assistance of his PCRA counsel for not filing an amended PCRA petition.  The rule is that ineffectiveness of PCRA counsel simply does not provide a ground for relief in federal habeas proceedings, as such ineffectiveness implicates no federal constitutional right given that Petitioner had no federal constitutional right to counsel at that stage in the proceedings.  Coleman v. Thompson, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.")(citations omitted).  Neither is there a substantive due process or equal protection right to counsel in state post conviction proceedings even if State law provides a right to counsel at the PCRA stage.  Jacobs v. McDaniel, 139 F.3d 905 (Table); 1998 WL 78440, at *1 (9th Cir. 1998)("Jacobs' claim that he was denied due process because the state habeas court refused to appoint counsel at the evidentiary hearing fails for lack of a right to counsel in state collateral proceedings."); Gibson v. Public Advocacy Dept., 35 F.3d 565 (Table), 1994 WL 462160, at *2 (6th Cir. 1994)("Similarly, neither the Due Process Clause of the Fourteenth Amendment nor the equal protection guarantee of 'meaningful access' to the courts requires the defendants to appoint counsel for Gibson [in state post conviction proceedings]. *See Murray v. Giarratano*, 492 U.S. 1, 7 (1989). Thus, it is beyond a doubt that Gibson has no federal constitutional right to counsel . . . ."); Pursell v. Horn, 187 F.Supp.2d 260, 373 (W.D. Pa. 2002)(holding in a death penalty case that "the due process clause does not require counsel for state post-conviction proceedings, whether state law requires such counsel or not.").  Accordingly, this issue does not merit relief.

13

Lastly, we take up Petitioner's claim that the evidence was insufficient to convict Petitioner of a conspiracy to commit robbery and insufficient to convict him of second degree murder.  To the extent that he seeks to raise this issue as if we were an appellate court reviewing the state courts' decisions as on a direct appeal, the claim is not cognizable.  The issue before us is not did the state courts commit an error nor is the issue was there sufficient evidence of the crimes.  Rather, the sole issue before us under AEDPA is whether the state courts' adjudication of the claimed insufficiency of the evidence was contrary to or an unreasonable application of then extant Supreme Court precedent.  Petitioner has not carried his burden under AEDPA to show that the state courts' adjudication of his insufficiency claim was contrary to or an unreasonable application of then extant Supreme Court precedent. The state courts recited the correct federal constitutional legal standard for testing the sufficiency of the evidence.  Compare Jackson v. Virginia, 443 U.S. 307, 316  (1979)("We hold that in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt") with Dkt. [17-4] at 43, State Trial Court slip op. at 2 ("In evaluating a challenge to the sufficiency of the evidence, the court must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as the verdict winner, are sufficient to permit the trier of fact to find that each element of the crime(s) charged were proven beyond a reasonable doubt.").  The state courts' use of this standard is not contrary to Jackson v. Virginia, 443 U.S. 307.  Nor was the state court's application of this standard an unreasonable application of Jackson v. Virginia, 443 U.S. 307.  See, e.g., Dkt. [17-4] at 43 to 47 (State Trial Court's

14

opinion); Dkt. [17-4] at 27 to 29 (State Superior Court slip op. on direct appeal, affirming "on the basis of the trial courts' Opinion").[4]   Accordingly, this issue does not afford Petitioner relief.

As none of the grounds Petitioner raises affords him relief, the petition will be denied.

**Certificate of Appealability**

---

[4]  Petitioner's main argument in this Court mirrors his argument in the state courts, namely that in order to convict him of second degree murder under state law, the Commonwealth had to prove the commission of the charged felony, i.e., robbery.  Petitioner contends here and in the state courts that his statement of September 2, 1999, which was introduced into evidence, only supports the fact that although he went to the apartment with the intent to commit a strong arm robbery of the victim, before the robbery commenced, he abandoned the conspiracy to commit the robbery.   The state trial court found that the state law defense of  abandonment was not effective under state law because Petitioner failed to communicate his intent to his co-conspirator to abandon the conspiracy to commit the robbery, which is a requirement under state law.  Dkt. [17-4] at 45.  Hence, Petitioner's abandonment defense fails as a matter of state law and the state court's determination of this state law defense is beyond the power of this Court to review.  Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997)("We accept a state court's interpretation of state law, ... and alleged errors in the application of state law are not cognizable in federal habeas corpus"); Whiting v. Stowitzky, NO. CIV A 06-1487, 2007 WL 965885, at *2 (W.D.Pa., March 28, 2007) ("Claims based on errors of state law or challenging a state court's interpretation of state law are not cognizable on federal habeas review.").
Petitioner also contends that no theft from the victim was established and hence, no robbery could have occurred and therefore, no conviction for second degree or felony murder can stand.  Dkt. [15] at 5.  However, as the Superior Court pointed out, a person is guilty of robbery under state law if

"in the course of committing a theft, he . . . inflicts serious bodily injury upon another."
18 Pa.C.S.A. § 3701(a)(1)(I).  An act will be deemed in the "course of committing a theft" for purposes of the robbery statute, "if it occurs in an attempt to commit theft or in flight after the attempt or commission."  18 Pa.C.S.A. § 3702(a)(2).

Dkt. [17-4] at 28.  Thus, a mere attempt to commit a theft (even if ultimately unsuccessful or even if no actual theft occurred) is sufficient for finding this element of robbery under state law.  The evidence, viewed in a light most favorable to the Commonwealth, was sufficient to show that Petitioner conspired with the co-defendant to engage in a strong arm robbery of the victim, that Petitioner did not communicate his alleged intent to abandon the conspiracy to do so, and that, in the course of the un-abandoned conspiracy, an attempt to commit the theft against the victim occurred, and "in the course of committing" that attempted theft and/or in the course of committing the conspiracy to rob the victim, the victim was killed and Petitioner fled thereafter.  This was sufficient under state law to constitute a robbery and/or conspiracy to commit a robbery and hence, sufficient to commit felony murder or murder of the second degree and to render Petitioner liable as a conspirator for these crimes under state law, as explained by the state courts.

15

A certificate of appealability ("COA"), which is a prerequisite for allowing an appeal to a Court of Appeals, should not be issued unless the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253 (c)(2).  A "substantial showing" requires a habeas petitioner to show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right[.]"  Slack v. McDaniel, 529 U.S. 473, 484 (2000). See also Walker v. Government of The Virgin Island, 230 F.3d 82, 89-90 (3d Cir. 2000).

Applying this standard to the instant case, the court concludes that jurists of reason would not find it debatable whether the petition fails to state a valid claim of the denial of a constitutional right.  Accordingly, a certificate of appealability is properly denied.

An appropriate Order follows.

/s/ Amy Reynolds Hay
Chief United States Magistrate Judge

Dated: 28 January, 2010

cc:   David James Young
      ET5266
      SCI Graterford
      PO Box 246
      Graterford, PA 19426

      All counsel of record via CM-ECF

16